**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| KEITH BLOCK, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-06-4016 |
| | § | |
| BRAD LIVINGSTON, *et al.*, | § | |
| | § | |
| *Defendants*. | § | |

**MEMORANDUM OPINION AND ORDER**

State inmate Keith Block, proceeding *pro se* and *in forma pauperis*, filed this lawsuit under 28 U.S.C. § 1983 against prison employees Arthur Velasquez, Victoria Dotson, Rachia Taylor, and Joseph Johnson for violations of his Eighth Amendment rights.  Defendants filed a motion for summary judgment (Docket Entry No. 35), to which plaintiff responded (Docket Entry No. 49).

After consideration of the pleadings, the motion and response, the probative summary judgment evidence, and the applicable law, the Court GRANTS in part and DENIES in part the motion for summary judgment, and PARTIALLY DISMISSES this case for the reasons set forth below.

**BACKGROUND AND CLAIMS**

Plaintiff states that in 1995 and 1996, he testified on behalf of the State in the criminal prosecution of several prison gang members for the murder of another inmate.  He completed his sentence and was released from prison in 2004.  He subsequently incurred four felony

convictions in March of 2006, and was returned to prison in May of 2006.  In June of 2006,

plaintiff requested that defendants Dotson, a case manager at the Darrington Unit, and

Velasquez, the warden at the Darrington Unit, place him in safekeeping housing because of

his testimony against the gang members ten years earlier.  His requests were denied, and he

was placed in general population.

On July 10, 2006, plaintiff was attacked by several other inmates and injured.

Plaintiff claims that the attack was gang related and in retaliation for his 1995-96 testimony.

He alleges that on the day of the assault, defendant Johnson, a prison guard, told plaintiff that

plaintiff's "associate" on two row wanted to talk with him.  Johnson escorted plaintiff to the

two row run, then ordered defendant Taylor, a second guard, to open two row's cell doors.

When the doors opened, several inmates exited their cells, called plaintiff a "snitch," and

assaulted him.  (Docket Entries No. 1, p. 8; No. 49, plaintiff's affidavit.)  Plaintiff purports

that Johnson was affiliated with gang members because he once gave the gang hand sign

when talking to an inmate gang member.  He purports that Taylor was affiliated with gang

members because she "repeatedly engaged in friendly conversation and flirtation" with an

inmate gang member, and was "rumored" to be romantically involved with an inmate gang

member.  (Docket Entry No. 49, plaintiff's affidavit.)

Plaintiff claims that defendants Velasquez and Dotson were deliberately indifferent

to his safety by placing him in general population.  He also claims that defendants Johnson

and Taylor were deliberately indifferent to his safety by intentionally leaving him on two row

then opening inmate cell doors so that the inmates could attack him.  He also complains that

Taylor and Johnson were deliberately indifferent to his safety by then standing by and

watching him being attacked without intervening to stop it or to alert other prison officers.

Plaintiff sues defendants in their official and individual capacities, and seeks monetary

damages for their failures to keep him safe.  Defendants allege they are entitled to Eleventh

Amendment immunity and qualified immunity, and argue that plaintiff's claims fail as a

matter of law.

## SUMMARY JUDGMENT STANDARDS

Summary judgment is proper if the pleadings, depositions, answers to interrogatories,

and admissions on file, together with any affidavits filed in support of the motion, show that

there is no genuine issue as to any material fact, and that the moving party is entitled to

judgment as a matter of law.  FED. R. CIV. P. 56(c).  In deciding a motion for summary

judgment, the Court must determine whether the pleadings and records indicate if there is a

genuine issue regarding any material fact and whether the moving party is entitled to

judgment as a matter of law.  *Id.*; *Celotex Corp. v. Catrett,* 477 U.S. 317 (1986); *Little v.

Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994).

The party moving for summary judgment has the initial burden of demonstrating the

absence of a material fact issue. *Kee v. City of Rowlett*, 247 F.3d 206, 210 (5th Cir. 2001).

To meet this burden, the movant must present evidence showing that the non-movant cannot

carry its burden of proof at trial. *Smith v. Brenoettsy,* 158 F.3d 908, 911 (5th Cir. 1998).  The

3

movant may accomplish this by showing that the non-moving party has presented no evidence in support of his claim. *Stahl v. Novartis Pharmaceuticals Corp.,* 283 F.3d 254, 263 (5th Cir. 2002). Once the movant has met this burden, the burden shifts to the non-movant to present specific facts showing that there is a genuine issue for trial; otherwise, summary judgment will be entered in favor of the movant. *Hart v. Hairston,* 343 F.3d 762, 764 (5th Cir. 2003).

## ANALYSIS

### 1.    OFFICIAL CAPACITY CLAIMS

Claims against the defendants in their official capacities are actually suits against the governmental entity that employs the defendants. *Kentucky v. Graham*, 473 U.S. 159 (1985). To prevail in an official capacity claim, a plaintiff must show that the government entity is the moving force behind the violation. *Id.* To do so, the plaintiff must identify a policy of the policy maker that caused the plaintiff to be subjected to a deprivation of his constitutional rights. *Grandstaff v. City of Borger,* 767 F.2d 161, 169 (5th Cir. 1985). At the least, the plaintiff must present specific facts showing a pattern of violations in order to prevail on a claim against a defendant in his official capacity. *Spiller v. City of Texas City,* 130 F.3d 162, 167 (5th Cir. 1997); *Frare v. City of Arlington,*957 F.2d 1268, 1278 (5th Cir. 1992). Plaintiff's allegations in the instant case fail to meet these pleading and proof requirements, and do not support an official capacity claim under section 1983. Defendants are entitled to summary judgment dismissing plaintiff's official capacity claims against them. *See City of*

*Oklahoma City v. Tuttle,* 471 U.S. 808 (1985); *Bigford v. Taylor,* 834 F.2d 1213, 1220 (5th Cir. 1988).

**2.      FAILURE TO PROTECT CLAIMS**

In *Farmer v. Brennan,* 511 U.S. 825 (1994), the Supreme Court addressed the issue of deliberate indifference to an inmate's safety in prison, and held that,

> [A] prison official cannot be held liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference[.]

*Id*. at 837.  It is well established through *Farmer* that prison officials have a constitutional duty to protect prisoners from violence at the hands of their fellow inmates.  *Id*. at 832-33. The duty is, however, one of reasonable safety, not absolute safety.  Under *Farmer*, an inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm, and that prison officials were deliberately indifferent to that risk of harm.  *Id*. at 834. In this context, an officer's awareness of the risk is evaluated subjectively.  The Supreme Court expressly stated in *Farmer* that, "[w]hether a prison official had the requisite knowledge of a substantial risk is a question of fact."  *Id*. at 842.  An official's failure to alleviate a significant risk which he should have perceived, but did not, cannot under *Farmer* be condemned as the infliction of punishment.  *Farmer*, 511 U.S. at 837-38; *see Reeves v. Collins,* 27 F.3d 174, 176 (5th Cir. 1994).

5

Plaintiff in the instant case raises three claims for failure to protect, each of which will be discussed separately, below.

**A.      Failure to Assign Safekeeping Housing**

Plaintiff claims that in June of 2006, he informed defendants Velasquez and Dotson of his 1995-96 trial testimony against prison gang members, and expressed his concerns that if housed in general population, he would be at risk for physical injury and retaliation by inmate gang members.  He requested, but was refused, permanent housing in safekeeping. Plaintiff claims that because his request for safekeeping housing was denied, he was attacked by the inmate gang members.

Defendants Velasquez and Dotson were members of the unit classification committee that reviewed plaintiff's placement at the Darrington Unit in June of 2006.  (Docket Entry No. 35, p. 7.)    Plaintiff asserts that because prison officials recognized his need for safekeeping housing back during his first period of incarceration when he testified against the gang members, and because the Darrington Unit had gang members, Dotson and Velasquez were subjectively aware that his housing in general population posed a substantial risk to his safety.

In his summary judgment affidavit, plaintiff states that during his classification session with Velasquez and Dotson, he voiced his concerns that other gang members and their associates were housed at the Darrington Unit.  (Docket Entry No. 49, plaintiff's affidavit.)  He states that he was placed in protective custody during the trial itself and at

various times during early June of 1998 and May of 1999.  He admits, however, that during

those time frames and until his release in 2004, he was periodically placed in separate

housing for disciplinary reasons.  *Id.*  Velasquez and Dotson do not dispute their awareness

of plaintiff's status as a State's informant against gang member inmates in the 1995-96

murder trial; they argue, however, that plaintiff gave them no specific information of any

actual threats to his safety in May of 2006 other than the fact of his decade-old testimony.

Plaintiff additionally claims that Velasquez and Dotson were deliberately indifferent

to his safety in telling him that because they had a list of his known enemies, they were going

to place him in general population.  Plaintiff contends that they could not have a complete

list of his enemies because there were friends and associates of the gang members in prison.

*Id.*  Velasquez and Dotson again respond that plaintiff did not inform them of any specific

friends or associates of the gang members, and did not identify any specific threats or

additional inmates to add to his enemies list.  Plaintiff did not report that he was the victim

of any inmate gang-related threats or assaults after 1999 and prior to his release from prison

in 2004.

Plaintiff fails to present any probative summary judgment evidence that defendants

Velasquez and Dotson had subjective knowledge of a substantial risk of harm to plaintiff in

general population housing in June of 2006 and that they disregarded that risk.  In short,

plaintiff does not show that he faced, and that these defendants were aware of, a substantial

risk of harm in general population housing upon his return to prison some ten years after his

trial testimony against gang members.

Defendants further contend that plaintiff was not an appropriate candidate for

placement in safekeeping housing. In support of their motion for summary judgment,

defendants submit the affidavit of Stacy LeBlanc, Program Specialist III and a member of

the State Classification Committee. In her affidavit, LeBlanc testifies, in relevant part, as

follows:

> After reviewing Offender Block's history during his multiple incarcerations[,]
> it is my opinion that Offender Block was denied safekeeping due to his violent
> and aggressive tendencies that would place other safekeeping offenders at risk
> of victimization should he be housed with them.
>
> Offender Block has a high level of criminal sophistication that is evident by
> his numerous incarcerations.  Offender Block is currently working on his
> second TDCJ incarceration and has been incarcerated in other prisons on 3
> occasions.  While incarcerated in the State of Arkansas, he was sanctioned for
> a staff assault that left an officer with serious injuries and unable to work for
> 30 days.  The Warden of that penitentiary stated that Offender Block was 'one
> of the most unmanageable inmates he had ever supervised.'
>
> On the prior TDCJ incarcerations, [O]ffender Block was involved in 5
> offender assaults, 4 verbal staff assaults, 7 physical staff assaults, and 2
> weapon possessions which justified his placement into administrative
> segregation.  He was also accepted into the PAMIO (Physically Assaultive
> Mentally Ill Offender) program at the Bill Clements Unit during that
> incarceration. He was later discharged from that program due to a disciplinary
> record that left him unable to attend the therapy sessions.  Offender Block has
> also had 13 cases for sexual misconduct in TDCJ that signifies his
> aggressiveness.
>
> Offender Block's request for safekeeping status is due to the testimony he gave
> relating to an offender homicide at the Polunsky Unit in 1994.  He testified

8

against 24 offenders of various races and gang affiliations.  In fact, Offender Block witnessed two homicides at the Polunsky Unit within a 3 month period. Since then, he has been transferred on two occasions due to his cooperation with Unit staff in providing information on staff and offenders who were trafficking contraband.  It is my professional judgment that [O]ffender Block utilizes his knowledge of illegal activities to manipulate assignments and/or his way out of sanctions for his own criminal activities.

Offender Block also has a very manipulative nature about him.  This is evident through his disciplinary record.  He has a total of 15 disciplinary offenses for establishing an inappropriate relationship with staff.  In some instances, he successfully manipulated the staff into bringing in contraband for sale to other offenders.  This manipulation would surely be used against more vulnerable safekeeping offenders if he were to be housed with them.

                              *     *     *     *

[I]f a threat still exists for [O]ffender Block due to his testimony, safekeeping will not prevent general population offenders of any gang affiliation or race from assaulting him.   Safekeeping offenders still participate in work, education, and other activities with general population offenders.  They are separated for recreation, showering, and housing assignment.

It is my professional opinion that if placed in safekeeping, [O]ffender Block would manipulate and prey on the more vulnerable offenders we are trying to protect, putting a large number of offenders at risk.

(Docket Entry No. 35, affidavit.)  Plaintiff does not controvert LeBlanc's factual statements, but argues instead that the offenses referenced in her statement occurred prior to his trial testimony and did not prevent his periodic placement in safekeeping during his trial appearances.  Nor, argues plaintiff, did they prevent the Security Threat Group Office from recommending his consideration for safekeeping housing at another unit on December 8, 2006, following its investigation of the July 10, 2006 assault.

9

Plaintiff's arguments, while reasonable, are misplaced.  Prison officials' subjective

knowledge of a significant risk to plaintiff's safety was clearly established for the time frame

he actively testified at trial against the gang members, then again following his gang-related

assault in July of 2006.  These clearly-established significant risks to plaintiff's safety do not

establish that Dotson and Velasquez had subjective knowledge of a significant risk to

plaintiff's safety in June of 2006 based on his 1995-96 trial testimony.

Plaintiff fails to establish that defendants Dotson and Velasquez were deliberately

indifferent to his safety needs in June of 2006, and no Eighth Amendment violation is shown.

Defendants Dotson and Velasquez are entitled to summary judgment dismissing plaintiff's

Eighth Amendment claims against them.

### B.      Causing, or Failing to Prevent, the Attack

Plaintiff claims that defendants Johnson and Taylor violated his Eighth Amendment

rights by knowingly and recklessly opening the inmate cell doors on two row while he was

standing in the run, which allowed the inmates to exit their cells and attack plaintiff on two

row.  Plaintiff testifies to the following in his summary judgment affidavit:

> On July 10, 2006 I was sitting in the K-line dayroom in a cellblock area at the
> Darrington Unit, where I was assigned to live, and Officer Joseph Johnson
> came into the K-line dayroom and informed me that an associate of mine
> wanted to see me, who lived on two row.  I lived on three row.  It was not time
> for an 'in and out,' or a regular time for opening cell[] doors.  I went up to two
> row in the company of Officer Joseph Johnson and he had to physically open
> a locked 'gate' at the front end of two row, in order to allow me to walk down
> two row.  As I walked toward the number sixteen cell I heard cell doors
> opening behind me, toward the front of the two row, and then toward the end

of the two row.  They had been opened by Officer Rachia Taylor, who was in the picket with the door opening mechanism for the two row.  Several prisoners emerged from the cells behind me and in front of me and began coming toward me.  They were calling me a 'snitch' and told me that I would not testify against their homeboys again.  They began assaulting me physically.  I was beaten for several minutes, while Officers Johnson and Taylor stood at the front end of two row, near the picket and just looked on.  Neither Johnson nor Taylor yelled out 'fight' to alert other officers of what was going on so that other officers could come to the scene to stop the beating.  It is TDCJ-CID policy for officers who observed a prisoner being beaten by other prisoners to summon help from other officers by yelling 'fight' or something similar, if the observing officer cannot intervene to stop the fight, or even use pepper spray. Johnson and Taylor just stood and watched me being beat by the gang pri[so]ners for several minutes and took no action to report it or summon help from other officers and supervisors.  Finally, another inmate intervened and helped me.

(Docket Entry No. 49, plaintiff's affidavit.)

Defendants argue that records from the investigation report reflect plaintiff giving a

different version of the incident:

Offender Block claims that he was in the dayroom on that Monday and another offender came down from 2-row and told him that someone had beat up his home boy, Collier, Billy[.] He went up to 2-row to help out.  He claims that he told them to fight him instead.  He started to fight one on one at first, but then many more offenders jumped in and took him down. . . . He claims that offender Hackney, Joshua had told offender Collier that he had to stab Block or get taken out himself.  Supposedly, Collier tried to fight but stayed in his cell.  Hackney tried to get at Collier and another offender ran down to 1-row to tell Block that his homeboy had been beat-up.

Block got into a one on one fight, and then another, but soon he was fighting more than one, and that is when they got the best of him.  He claims he doesn't remember too much after that.

11

(Docket Entry No. 35, Exhibit A, p. 3.)  This investigation report is not signed by plaintiff

or supported by any signed statement submitted to investigators by plaintiff.  Plaintiff

testifies in his summary judgment affidavit that it was Johnson who took plaintiff to two row,

left him there, then ordered the cell doors rolled open immediately before the attack.

In a handwritten statement submitted to prison investigators after plaintiff's assault,

defendant Johnson stated that:

> I Officer Johnson was doing a in.  I did one row, then running a in on 2 row[.]
> I couldn't really talk to [Taylor] because inmate[]s were always talking to her.
> I couldn't get my two row in because they were out of control.  I also brought
> two row and three out at the same time because I was having a hard time
> running in's and out's.  Making it really out of control.  A f[i]ght broke out[.]
> I yelled brake [sic] it up, it lasted about fifteen second[]s.  I then assisted
> [plaintiff] down to one row.  I let him wash his self [sic] off in one row
> washroom after telling the hallway officer to call rank.  I saw three inmate[]s
> running away when I yelled brake [sic] it up.

*Id.*, p. 5.  In her handwritten statement, defendant Taylor stated that:

> We were rolling an in and out on 2 row. [Johnson] told me to roll all the doors.
> I rolled the doors.  He went downstairs to the dayroom and the[n] came back
> up.  He was standing near 2 cell for about 2 minutes.  Then he started closing
> the doors.  I did not see the actual altercation.  I only seen [sic] when some
> inmates were helping [plaintiff] to the dayroom.  Then J. Johnson called for
> rank to come down there because there had been a fight.

*Id.*, p. 7.

The probative summary judgment evidence raises a genuine issue of material fact

regarding defendant Johnson's subjective knowledge of a substantial risk to plaintiff's safety.

It does not, however, raise a genuine issue of material fact as to defendant Taylor's subjective

knowledge of a substantial risk to plaintiff's safety in rolling open the two row cell doors as

12

ordered by Johnson.   Plaintiff's allegations that Taylor was "in" with the inmate gang members and helped Johnson set up the attack are conclusory, unsupported by probative evidence, and insufficient to preclude summary judgment at to defendant Taylor's alleged deliberate indifference in opening the cell doors.   Plaintiff's claims against defendant Taylor for causing, or failing to prevent, the attack will be dismissed.

Defendant Johnson claims entitlement to qualified immunity for his actions in ordering the two row cell doors rolled open.   To determine whether an official is entitled to qualified immunity, courts engage in a two-part analysis.   *McClendon v. City of Columbia*, 305 F.3d 314, 322 (5th Cir. 2002).   First, the court asks whether the plaintiff has alleged a violation of clearly established constitutional right.   *Id*. at 322-23.   If so, the court must then decide whether the defendant's conduct was objectively reasonable in light of the clearly established law at the time of the incident.   *Id*. at 323.   A governmental official is entitled to qualified immunity if the plaintiff failed to state a constitutional claim or if the defendant's alleged conduct was objectively reasonable.

Defendant Johnson was under a well established duty to reasonably protect plaintiff from harm from other inmates.   *Farmer*.   It is clear to this Court that defendant Johnson's conduct in ordering Taylor to open the two row cell doors was not objectively reasonable given plaintiff's probative evidence that Johnson intentionally placed him in the two row run immediately beforehand.   Accordingly, defendant Johnson's motion for summary judgment on the basis of qualified immunity will be denied.

### C.    Failure to Intervene in the Attack

Defendant Johnson's summary judgment evidence shows that he was aware of the

fight but that he took no action to intervene or stop it, and that he did not alert prison officers

until the fight was over.  (Docket Entry No. 35, Exhibit A, p. 5.)  Defendant Taylor states that

she was unaware of the altercation until it was over.  *Id.*, p. 7.  Plaintiff claims that both

Taylor and Johnson watched him being attacked by the other inmates and that they took no

action to intervene or stop it or to alert other prison officers.

Defendants Taylor and Johnson argue that they had no duty to intervene on plaintiff's

behalf and are entitled to summary judgment as a matter of law under *Longoria v. State of*

*Texas*, 473 F.3d 586, 593-94 (5th Cir. 2006).  (Docket Entry No. 35, pp. 9-10.)  In *Longoria*,

the Fifth Circuit held:

> Although we have previously held that an officer's failure to take reasonable
> measures to protect a suspect from excessive force can give rise to § 1983
> liability, *see Hale v. Townley*, 45 F.3d 914, 919 (5th Cir. 1995); *Harris v.*
> *Chanclor*, 537 F.2d 203, 205-06 (5th Cir. 1976), no rule of constitutional law
> requires unarmed officials to endanger their own safety in order to protect a
> prison inmate threatened with physical violence. The officers violated no
> 'clearly established' law by failing to intervene while unarmed.

473 F.3d at 593-94.  *Longoria* supports plaintiff's claims under the summary judgment

evidence presented – and absent – in this case.  The Fifth Circuit's precedent recognizes that

an officer's failure to take reasonable steps to protect an inmate from excessive force can

give rise to Eighth Amendment liability.  In *Longoria*, the Fifth Circuit refused to apply that

precedent to require an *unarmed* prison officer to endanger his own safety in order to protect

14

a prison inmate threatened with physical violence. The inmates in *Longoria* were armed, the

guards unarmed.  Defendants Johnson and Taylor present no probative summary judgment

evidence that the inmates who attacked plaintiff were armed, that they themselves were

unarmed, and that intervening to protect plaintiff or call for help would have endangered

their own safety.  In short, Johnson and Taylor fail to show that their actions fell within the

parameters of *Longoria*.

Plaintiff presents probative summary judgment evidence that defendants Johnson and

Taylor stood by and watched his attack without intervening to prevent harm to him or calling

for help.  Johnson admits that he did nothing more than yell once for them to "break it up,"

and that he did not call for help until the attack was over.  This Court finds that the actions

of defendants Johnson and Taylor were not objectively reasonable under the circumstances,

and that genuine issues of material fact preclude the granting of summary judgment regarding

these claims.  Accordingly, the Court denies defendants Johnson's and Taylor's motion for

summary judgment on the basis of qualified immunity under plaintiff's claims for their

failure to intervene or call for help.

## CONCLUSION

For the reasons stated above, the Court ORDERS as follows:

1. Defendants' motion for summary judgment (Docket Entry No. 35) is GRANTED in part as to plaintiff's Eighth Amendment claims against defendants Velasquez and Dotson.

Plaintiff's claims against defendant Velasquez and Dotson are DISMISSED WITH PREJUDICE.

2.     Defendants' motion for summary judgment (Docket Entry No. 35) is GRANTED in part as to plaintiff's Eighth Amendment claim against defendant Taylor for her causing, or failing to prevent, the attack.

Plaintiff's claim against defendant Taylor for her causing, or failing to prevent, the attack is DISMISSED WITH PREJUDICE.

3.     Defendants' motion for summary judgment (Docket Entry No. 35) is DENIED in part as to plaintiff's Eighth Amendment claim against defendant Johnson for his causing, or failing to prevent, the attack.

Plaintiff's claim against defendant Johnson for his causing, or failing to prevent, the attack is RETAINED by the Court for further proceedings.

4.     Defendants' motion for summary judgment (Docket Entry No. 35) is DENIED in part as to plaintiff's Eighth Amendment claims against defendants Johnson and Taylor for their alleged failures to intervene in or prevent harm to plaintiff during the attack.

Plaintiff's claims against defendants Johnson and Taylor for their alleged failures to intervene in or prevent harm to plaintiff during the attack are RETAINED by the Court for further proceedings.

The Clerk will provide copies of this order to the parties.

Signed at Houston, Texas on March 18, 2008.

Gray H. Miller
United States District Judge

16